# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class DARRELL K. BRISCOE JR.**
**United States Army, Appellant**

ARMY 20170302

Headquarters, United States Army Alaska
Kenneth Shahan and Lanny J. Acosta, Jr., Military Judges
Colonel Roseanne M. Bennett, Staff Judge Advocate

For Appellant:  Colonel Elizabeth G. Marotta, JA; Major Julie L. Borchers, JA (on brief); Colonel Elizabeth G. Marotta, JA; Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA (on reply brief).

For Appellee:  Colonel Steven P. Haight, JA; Lieutenant Colonel Eric K. Stafford, JA; Captain Catharine M. Parnell, JA; Captain Allison L. Rowley, JA (on brief).

9 July 2019

--------------------------------
SUMMARY DISPOSITION
--------------------------------

Per Curiam:

In this appeal we address appellant's assertions that his plea of guilty to sexual assault was improvident and that he should receive relief due to dilatory post-trial processing by the government.  While we find neither allegation of error warrants relief, we take this opportunity to briefly address appellant's improvidence claim.

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of once specification each of violating an order from a superior commissioned officer, fleeing apprehension, and sexual assault, in violation of Articles 92, 95 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 895, 920 (2012) [UCMJ].[1]  The military judge sentenced appellant to a dishonorable

---

[1] We do not discuss the facts and circumstances surrounding the Article 92, UCMJ, or Article 95, UCMJ, charges as we find appellant's pleas of guilty to these offenses provident.

discharge and confinement for twenty-four months, a sentence later approved by the convening authority. This case is before us for review pursuant to Article 66, UCMJ.

## BACKGROUND

On 9 September 2016, appellant, Airman First Class (A1C) MW, and Private First Class (PFC) PM went to another Soldier's home to watch football. The attendees drank and played games into the evening. Airman First Class MW, PFC PM, and appellant stayed overnight. They resumed drinking the next morning, and at around 2200 hours, A1C MW passed out in a bathroom after consuming roughly ten to fifteen beers. Private First Class PM, her then-boyfriend, put A1C MW to bed on an air mattress in an upstairs bedroom and returned to the gathering downstairs.

After PFC PM returned, appellant went upstairs to use the restroom. On his way, he entered the bedroom where A1C MW was sleeping, closed the door, and laid down next to A1C MW. Appellant kissed A1C MW on the mouth, pulled down her shorts and underwear, and then penetrated her vulva with his tongue. After hearing a noise, appellant left the room and went to the restroom.

The government charged appellant under three theories of sexual assault under Article 120, UCMJ. Pursuant to a pretrial agreement, appellant pleaded guilty to violating Article 120(b)(2), UCMJ, by committing a sexual act on A1C MW when appellant knew or reasonably should have known she was unaware that the sexual act was occurring due to her intoxication.[2]

Appellant asserts the government used a novel theory under Article 120(b)(2), UCMJ, which caused confusion among the trial participants, thus rendering his guilty plea improvident. Specifically, appellant argues that by alleging A1C MW was "unaware" of the sexual act due to her intoxication, the government appeared to blend the theories of liability under Article 120(b)(2), UCMJ, with Article 120(b)(3), which involves a victim incapable of consent due to intoxication. Appellant further asserts he did not admit facts sufficient to establish A1C MW was unaware the sexual act was occurring. We disagree on both points, as discussed below.

---

[2] The other two specifications alleged, respectively, that appellant committed a sexual act on A1C MW by causing her bodily harm (Article 120(b)(1)(B)), and committing a sexual act on A1C MW when she was asleep (Article 120(b)(2)). After the plea inquiry but before entry of findings, the military judge dismissed these specifications with prejudice.

**LAW AND DISCUSSION**

We review a military judge's acceptance of a guilty plea for an abuse of discretion and questions of law arising from the plea de novo. *United States v. Murphy*, 74 M.J. 302, 305 (C.A.A.F. 2015) (citing *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). An abuse of discretion occurs when a military judge fails to obtain from an accused an adequate factual basis to support the plea or has an erroneous view of the law. *Inabinette*, 66 M.J. at 322 (citations omitted). We will not disturb a guilty plea unless appellant demonstrates a substantial basis in law or fact for questioning the plea. *Id.* (citation omitted).

As an initial matter, we acknowledge that Article 120(b)(3), UCMJ, may have been an appropriate charge in this case, based upon A1C MW's inability to consent due to intoxication. However, that does not mean appellant could not plead guilty to a violation of Article 120(b)(2), UCMJ.

Article 120(b)(2), UCMJ, provides, in relevant part, any person who "commits a sexual act upon another person when the person knows or reasonably should know that the other person is asleep, unconscious, or otherwise unaware that the sexual act is occurring" is guilty of sexual assault. Our superior Court has recognized this provision presents three discrete theories of criminal liability, one of which requires that the accused knew or reasonably should have known the victim was unaware of the sexual act. *See United States v. Sager*, 76 M.J. 158, 162 (C.A.A.F. 2017). Thus, being asleep or unconscious are not examples of how an alleged victim may be unaware for purposes of this provision. *Id.* As our court has put it, "'[O]therwise unaware' means a victim who is unaware that the sexual contact is taking place for reasons *different than* the victim being asleep or unconscious." *United States v. Brantley*, ARMY 20150199, 2017 CCA LEXIS 742, *7 (Army Ct. Crim. App. 30 Nov. 2017) (emphasis in original). In our view, intoxication by alcohol that renders a victim unaware of her surroundings may, under the circumstances, be different than being asleep or unconscious. Appellant's providence inquiry adequately establishes such circumstances in this case.

Although the charging decision made the providence inquiry difficult to follow at times, we do not find it caused enough confusion to render appellant's plea improvident. At the outset, the military judge provided appellant the elements and definitions for Article 120(b)(2). *See* Dep't of Army Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 3-45-15 (10 Sept. 2014) [Benchbook]. While consent was not an element of this offense, the military judge also provided appellant with a definition of consent, explaining that a sleeping or unconscious person is unable to consent, and, later, "[a] person is incapable of consenting when they lack the cognitive ability to appreciate the sexual conduct in question . . . ."

3

Appellant explained that after entering the room, he attempted to wake up A1C MW. Appellant initially told the military judge A1C MW was awake because she made eye contact with appellant, although appellant acknowledged she made "no verbal indication of being fully aware at the time." Appellant explained he kissed MW on the cheek, and she then rolled away from appellant. Appellant then pulled down A1C MW's pants and performed oral sex on her. He said he believed she was awake because of the eye contact.

During this exchange, the military judge asked appellant if A1C MW was able to consent. Appellant acknowledged she was not capable due to her intoxication. Appellant also acknowledged that even though he thought A1C MW had awakened, she was unaware of what he was doing. Later, the following exchange occurred:

> MJ: So even though she—earlier you stated that you think she woke up but do you believe she was unaware?
>
> A: Yes, your honor.
>
> MJ: So, you don't think that she knew what was going on at the time that you committed the sexual act upon her?
>
> A: No, Your Honor, I do not.

Appellant further explained that after he kissed A1C MW on the cheek, before performing oral sex on her, she rolled away from him. Appellant stated that A1C MW started moving when he performed oral sex on her, which could have been her reacting to the "sensation of pleasure."

Not long after this exchange, the military judge expressed some concern that the government was alleging a hybrid of two different theories in the charge, those being that appellant knew or should have known A1C MW was unaware of the sexual contact and that A1C MW was incapable of consent. Trial counsel responded that the specification covered the first theory and that alcohol intoxication was the mechanism by which A1C MW was unaware. The military judge then expressed his concern whether appellant actually believed, or knew or should have known, A1C MW was unaware of the sexual act.

Following a recess, the military judge again instructed appellant on consent, noting that a sleeping, unconscious, or incompetent person cannot consent to a sexual act. Given appellant's admitted intoxication during the incident, the military judge also instructed him on the defense of mistake of fact. Appellant acknowledged that he believed or should have believed A1C MW was unaware of the sexual act and, further, that she did not know what was going on.

4

In a guilty plea case, a military judge must resolve inconsistencies and possible defenses in order to accept a plea. *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996) (citation omitted). "Mere conclusions of law recited by an accused are insufficient to provide a factual basis for a guilty plea." *Id*. Here, we do not find appellant was merely reciting legal conclusions to the military judge. On the contrary, appellant stated or acknowledged no fewer than seven times that he knew or should have known A1C MW was unaware or did not know what was going on at the time of the assault. The facts elicited during the providence inquiry (e.g., no prior relationship between appellant and A1C MW, both parties intoxicated, A1C MW's eye contact at times) support appellant's admissions that she was unaware the sex act was occurring. We do not find a substantial basis in law or fact to upset appellant's plea.

## CONCLUSION

The findings and sentence are AFFIRMED.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court